**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT ROBINSON,<br>    Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-6091 |
| | : | |
| ANTHONY LETIZIO, *et al*., | : | |
|     Defendants. | : | |

**MEMORANDUM**

**BEETLESTONE, C. J.**                                              **FEBRUARY  19 , 2026**

Plaintiff Robert Robinson, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his constitutional rights and related state law claims arising from alleged indifference to his serious medical needs.  Currently before the Court are Robinson's Complaint ("Compl." (ECF No. 1)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 4), and his Prisoner Trust Fund Account Statement, (ECF No. 5).  Robinson asserts claims against Wellpath, LLC ("Wellpath"), Dr. Anthony Letizio, Chief Health Care Administrator Brittany Huner, and Physician Assistant Dr. Bora.  (Compl. at 4.)  The Court will grant Robinson leave to proceed *in forma pauperis*. The following claims will be dismissed with prejudice: Rubinson's official capacity claims against the individual Defendants, his claims based on the Defendants' refusal to replace his back brace, and his claims based on denials of MRIs on his back in 2019 and early 2023.  The remainder of Robinson's constitutional claims will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Robinson's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction.  Robinson will be granted leave to file an amended complaint.

## I.    FACTUAL ALLEGATIONS[1]

The gravamen of Robinson's claim is that for more than eight years, the Defendants have refused to schedule an MRI study of his back.  (Compl. at 3.)  He contends that as a result, he has been denied proper medical care and has not received "the next course of treatment on his back." (*Id*. at 11.)  He suffers from severe pain in his lower back, numbness and burning in his left leg and left buttock, difficulty walking, and has developed urinary incontinence.  (*Id*. at 11, 12.)

Robinson, who is 61 years old, was transferred from SCI Graterford to SCI Phoenix in 2018.  (*Id*. at 4, 8.)  At the time of the transfer, his back brace was confiscated.  (*Id*. at 8.) Although Wellpath had previously approved Robinson's use of the brace, Letitzio told Robinson he no longer needed it, and Letizio and the other Defendants refused to replace it.  (*Id*.) Following Robinson's transfer to SCI Phoenix, he received physical therapy for his back on at least 13 occasions between July 5, 2018 and August 27, 2019.  (*Id*. at 6.)  Upon conclusion of the therapy, therapist Jack Waters advised Robinson that there was no more he could do to provide relief.  (*Id*.)  During this time, Robinson was prescribed Mobic, a non-steroidal anti-inflammatory drug, to treat his pain.  (*Id*. at 7.)  Additionally, at some point, he received an x-ray of his back.  (*Id*. at 15.)

It is not clear from the Complaint when Robinson first requested an MRI study of his back, but he alleges that on June 24, 2019, non-Defendant Dr. Hanuschak told him that he would not be scheduled for an MRI due to Wellpath's budgetary restrictions.  (*Id*. at 7.)  Robinson filed a grievance based on the refusal to schedule an MRI.  (*Id*.)  The grievance was denied initially

---

[1] The factual allegations set forth in this Memorandum are taken from Robinson's Complaint (ECF No. 1).  The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in Robinson's pleading will be corrected for clarity.

and on appeal.  (*Id.* at 7-8.)  During a sick call screening that occurred on January 19, 2023, when Robinson complained that his back pain had worsened, Letizio allegedly told him to stop making sick calls and learn to deal with the pain.  (*Id.* at 9.)  Also during that visit, upon consultation with Letizio, a nurse provided Robinson with eight steroid pills to address the inflammation in his back and told him that Letizio had stated that he would be scheduled for an MRI the next week.  (*Id.* at 10.)  Several months later, in May 2023, Robinson sent a DC-135A Inmate's Request to Staff Member to Defendant Huner, asking why the MRI had not been scheduled.  (*Id.* at 9.)  In response to his inquiry, Huner told him that she did not schedule MRIs and that he should return to sick call if his symptoms returned.  (*Id.* at 10.)

On October 7, 2024, while in the medical unit for renewal of his medication and bottom bunk status, Robinson was informed that Letizio had determined that he no longer needed bottom bunk status.  (*Id.* at 5-6.)  At the time, Robinson had had bottom bunk status for five years.  (*Id.* at 6.)  On the same day, Robinson requested that his medication be changed because it was not effective at treating his pain.  (*Id.* at 6-7.)  Dr. Bora allegedly responded, "You people think you are supposed to receive A-1 medical treatment," and further remarked that Robinson was in jail to be punished and that is why Bora was there.  (*Id.*)  She also allegedly remarked that his medication would not be changed because "you's people" only wanted to get high or sell medication.  (*Id.* at 7.)  Robinson contends that these remarks, and Bora's actions, were racially motivated.  (*Id.*)  Bora denied Robinson's request that his medication be changed and told him to learn to cope with the pain.  (*Id.* at 10.)  Robinson claims that as of the filing of his Complaint, he had still not been scheduled for an MRI study, and as a result, continued to suffer from increasingly severe symptoms.  (*Id.*)

3

Robinson attributes the Defendants' refusal to schedule an MRI to Wellpath's alleged policy of maximizing savings by limiting inmates to on-site care unless a "life threatening injury or illness" occurred. (*Id*. at 9.) By doing so, Wellpath ensured that it would keep any funds allotted for care that were not actually spent on care. (*Id*.) This custom or policy allegedly included delaying care until an inmate was due to be released, when the financial burden of care would fall on the inmate, or was close to death. (*Id*.)

Robinsons asserts Eighth Amendment[2] claims and state law negligence claims against the individual Defendants. (*Id*. at. 11-16, 18.) Additionally, he asserts a claim against Wellpath, based on its alleged creation and enforcement of a policy designed to deny inmate care in order to reap financial reward**s**. (*Id*. at. 16.) He seeks injunctive relief[3] and money damages. (*Id*. at 19.)

---

[2] Robinson also refers to the Fourteenth Amendment as a basis for relief. (Compl. at 11.) The Fourteenth Amendment governs deliberate indifference claims asserted by pretrial detainees. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Because Robinson was a convicted prisoner at the time of the events giving rise to his claims, the Eighth Amendment governs his deliberate indifference claims. However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (*per curiam*); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care). As there appears to be no other basis for a Fourteenth Amendment claim in Robinson's Complaint, the Court will analyze his claims under the Eighth Amendment.

[3] Robinson seeks an order requiring the immediate scheduling of an MRI study of his back and an examination by a qualified medical practitioner with expertise in treating back pain and spinal cord injuries. (Compl. at 19.) In light of the Court's disposition of his claims, Robinson's request for injunctive relief will be denied without prejudice at this time.

## II.    STANDARD OF REVIEW

The Court will grant Robinson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[4]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  Additionally, a court may dismiss a complaint based on an affirmative defense such as the statute of limitations when the "defense is apparent on the face of the complaint."  *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  As Robinson is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[4] Because Robinson is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

Additionally, the Court must review the pleadings and dismiss the matter if it determines, *inter alia*, that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III. DISCUSSION

Robinson asserts claims based on alleged violations of his constitutional rights. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020).

### A. Statute of Limitations

Robinson asserts Eighth Amendment claims based on the Defendants' alleged indifference to his serious medical needs. (*See* Compl.) However, based on the allegations in the Complaint, Robinson's claims are largely time-barred. Section 1983 claims such as those

asserted by Robinson are subject to the state statute of limitations for personal injury actions. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  In Pennsylvania, the applicable statute of limitations is two years.  *See* 42 Pa. Cons. Stat. § 5524.  A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotations omitted).  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Robinson describes alleged instances of deliberate indifference to his back pain beginning in 2018 when he was first transferred to SCI Phoenix and continuing through October 7, 2024.  (*See* Compl.)  These include the confiscation of his back brace and the Defendants' refusal to replace it, which occurred in 2018, the alleged refusal of an MRI based on cost in 2019, and a second denial of an MRI in 2023.  (*Id*. at 7-10.)  Any claims arising from these actions accrued no later than May 18, 2023, the date Huner advised Robinson that she would not schedule an MRI for him.  (*Id*. at 10.)  *See Hickox v. County of Blair*, 591 F. App'x 107, 110 (3d Cir. 2014) (*per curiam*) ("Hickox's cause of action accrued on November 13, 2010, the date on which he alleges he was injured by the defendants' actions."). As a prisoner, Robinson is deemed to have filed his Complaint when he gave it correctional officials to be mailed.  *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Moody v. Conroy*, 680 F. App'x 140, 144 (3d Cir. 2017) (*per curiam*) ("Under the prison mailbox rule, . . . a pleading is deemed filed at the time a prisoner executes it and delivers it to prison authorities for mailing.").  Presumably, that is the same day he dated the pleading, September 29, 2025, which was two years and five months after this event.  Any claims arising from these events are, accordingly, time-barred.

"Although the running of the statute of limitations is ordinarily an affirmative defense, where that defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim." *Ostuni v. WaWa's Mart*, 532 F. App'x 110, 111-12 (3d Cir. 2013) (*per curiam*); *see also Harris v. Stash*, No. 22-1910, 2023 WL 1990531, at *2 (3d Cir. Feb. 14, 2023) (*per curiam*) ("[A] court may dismiss claims *sua sponte* if a time-bar is obvious from the face of the complaint and no further development of the record is necessary."), *cert. denied*, 144 S. Ct. 579 (2024).  For these reasons, Robinson's claims based on the confiscation of his back brace and the two denials of an MRI on his back that he describes will be dismissed as time-barred.[5]

## B.  Deliberate Indifference Claims

Robinson asserts Eighth Amendment deliberate indifference claims against Letizio and Bora, claiming that, on October 7, 2024, Letizio rescinded his bottom bunk status, and Bora

---

[5] The Court recognizes that prisoners seeking to challenge the conditions of their confinement are subject to the Prison Litigation Reform Act ("PLRA"), which mandates exhaustion of all available administrative remedies before bringing a lawsuit.  42 U.S.C. § 1997e(a). "The [Pennsylvania Department of Corrections] has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA." *Jackson v. Carter*, 813 F. App'x 820, 823 (3d Cir. 2020) (*per curiam*).  Briefly, an inmate must file an initial written grievance, appeal to the facility manager, and file a final written appeal to the Secretary's Office of Inmate Grievances and Appeal.  *Id.*; *see also Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 151 (3d Cir. 2016) (describing DOC grievance process in more detail).  "[T]he PLRA is a statutory prohibition that tolls Pennsylvania's statute of limitations while a prisoner exhausts administrative remedies." *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603 (3d Cir. 2015).  Robinson refers to a grievance filed after Hanschuk advised him in 2019 that no MRI would be scheduled for him because of cost considerations.  (*See* Compl. at 7-8.)  He alleges that the appeal process concluded on October 22, 2019.  (*Id*. at 8.)  It is not clear from the Complaint whether Robinson filed a grievance following Huner's alleged refusal to schedule an MRI in 2023, thus extending the accrual of any claim related to that conduct.  Because he will be permitted to amend his Complaint, Robinson may include any allegations relevant to the accrual of his claims.

refused to change his pain medication after being advised that it was ineffective. (Compl. at 5, 6-7.) He claims that as a result of their deliberate indifference to his continuing back pain, he has experienced severe pain in his lower back, numbness and burning in his left leg and left buttock, difficulty walking, and has developed urinary incontinence. (*Id*. at 11, 12.) Robinson's claims, as pled, are not plausible.[6]

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a

---

[6] Robinson claims that the Defendants conspired to deny him medical care. (Compl. at 11.) The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of [constitutional rights]; (2) one or more of the conspirators performs . . . any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States," with the added gloss under § 1983 that "the conspirators act 'under the color of state law.'" *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 (3d Cir. 2018) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001). Additionally, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Robinson's bare assertion that the Defendants conspired to deny him medical treatment and thereby deny him his Eighth Amendment rights is undeveloped and conclusory and not plausible as pled. This claim will be dismissed and Robinson will be granted leave to amend it.

prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182

F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be

expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Township*,

946 F.2d 1017, 1023 (3d Cir. 1991).

Inadequate medical care rises to the Eighth Amendment level only when a plaintiff can

show both a serious medical need and acts or omissions by prison officials that indicate

deliberate indifference to that need. *Estelle v. Gamble,* 429 U.S. 97, 102, (1976). Not every

complaint of inadequate prison medical care rises to the level of deliberate indifference.

*Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*).

"Where a prisoner is receiving some amount of medical treatment, [courts] presume that the

treatment is adequate absent evidence that it violates professional standards of care." *Id*.

(affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of*

*Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84,

88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical

treatment, it is difficult to establish deliberate indifference, because prison officials are afforded

considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent*

*Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some

medical attention and the dispute is over the adequacy of the treatment, 'federal courts are

generally reluctant to second guess medical judgments and to constitutionalize claims which

sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette County*,

599 F.2d 573, 575 n.2 (3d Cir. 1979)). Moreover, mere disagreement with a prison medical

provider's treatment plan is insufficient to allege a plausible deliberate indifference claim. *See*

*Ryle v. Fuh*, 820 F. App'x 121, 123-24 (3d Cir. 2020) ("Ryle also cannot show deliberate

10

indifference with regard to Nurse Green or Dr. Jackson because he expressed only "mere disagreement" with their post-surgery treatment plan.").

With respect to Letizio's refusal to renew Robinson's bottom bunk status, "'[c]ourts have found that it can be an Eighth Amendment violation where an inmate has a serious medical need requiring him to use the bottom bunk, but prison officials are deliberately indifferent to that need.'" *Saunders v. GEO Grp., Inc.*, No. 19-2322, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quoting *Whitehead v. Wetzel*, No. 14-51, 2016 WL 356809, at *7 (W.D. Pa. June 2, 2016); *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015) (reversing grant of summary judgment where disputed issue of material fact existed from which a rational factfinder could conclude that prison doctor recklessly disregarded prisoner's need for a lower-bunk assignment or denied the lower-bunk assignment for non-medical reasons)); *see also Guilfoil v. Pierce*, No. 06-493, 2009 WL 688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious."). While denial of bottom bunk status can provide a basis for an Eighth Amendment claim, Robinson claim is undeveloped. Though he describes back and leg pain, he does not state that he is unable to climb to a top bunk. Additionally, he does not state that, despite his bottom bunk status not being renewed, he was actually assigned to a top bunk. With respect to Bora's alleged refusal to change his medication, Robinson's mere disagreement with the treatment he was receiving does not provide an adequate basis for an Eighth Amendment claim.[7]  *See Ryle*, 820 F. App'x at 123-24.

---

[7] To the extent Robinson attributes Bora's refusal to adjust his medication to racism and seeks to assert a claim based on an alleged violation of his equal protection rights, (*see* Compl. at 7), the claim is undeveloped and conclusory and does not state a plausible claim. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy*

11

Robinson alleges that, since being transferred to SCI Phoenix in 2018, he has received physical therapy and has been prescribed Mobic for pain. (Compl. at 6, 7.) Also, he alleges that at some point, he received an x-ray of his back. (*Id*. at 15.) Thus, he has received some amount of treatment and diagnostic testing in response to his complaints of pain and there is no basis on which to infer that the treatment he received violated professional standards of care. As such, he has not stated a plausible claim for deliberate indifference to his serious medical needs. *Davis*, 597 F. App'x. at 45. Moreover, while Robinson refers generally to an "injury" that he asserts should have warranted examination by a specialist with expertise in treating spinal cord injuries, (Compl. at 17), he does not identify any particular injury, does not describe when or how he suffered any injury, and does not state that a medical professional diagnosed an injury or recommended related treatment. For this reason, too, his claim is not plausible as pled. Additionally, though the gravamen of Robinson's claim appears to be that the Defendants have shown deliberate indifference to his serious medical needs by refusing to schedule an MRI of his back, he does not allege that he requested an MRI after Huner's refusal to schedule one in early 2023. Although Robinson's deliberate indifference claims will be dismissed as not plausible, he will be granted leave to amend these claims and may address these deficiencies if he chooses to amend.

---

*Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other."); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018). Similarly, to the extent Robinson seeks to assert an Eighth Amendment cruel and unusual punishment claim against Bora based on her alleged use of the word "punish" in her comments to him during his medical visit, that claim, too lacks any context, is wholly undeveloped and therefore not plausible. (*Id*.)

## C.    Claims Against Wellpath and Official Capacity Claims

Robinson includes a claim against Wellpath in his Complaint based on its alleged custom or practice of limiting care to inmates for financial reasons. (*See* Compl.)  A private corporation under contract to provide medical services at a jail or prison may be liable under § 1983 in certain circumstances.  The United States Court of Appeals for the Third Circuit has held that "a private health company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'"  *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale*, 318 F.3d at 583 (applying *Monell* [*v. Dep't of Soc. Servs.,* 436 U.S. 658 (1979)] to claims against medical contractor)). Rather, in order to hold a private health care company like Wellpath liable for a constitutional violation under § 1983, Robinson must allege the provider had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]."  *Natale*, 318 F.3d 575, 583-84 (citing *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see also Lomax v. City of Philadelphia*, No. 13-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs.") (citations and quotations omitted).  Generalized allegations of insufficient staffing fail to state a claim where the Complaint does not allege a constitutional violation attributable to the health provider's policies or customs.  *See Brown v. Delaware Cnty. Prison Bd. of Inspectors*, 741 F. App'x 135, 138 (3d Cir. 2018) (*per curiam*) ("Brown's vague and conclusory allegation that the defendants had a policy or custom of 'fail[ing] to provide an adequate level of security staffing,' is insufficient to state a claim.").

13

A plaintiff may also state a basis for liability against an entity like Wellpath by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  In the context of a contract medical provider, the provider's "failure to train or supervise must amount to a policy or custom in disregard of an obvious risk that its employees or agents would commit constitutional violations." *Ponzini v. PrimeCare Med., Inc*., 269 F. Supp. 3d 444, 526 (M.D. Pa. 2017), *aff'd in part, vacated in part on other grounds sub nom. Ponzini v. Monroe County*, 789 F. App'x 313 (3d Cir. 2019).

Robinson's Complaint alleges that Wellpath has created and implemented a custom or policy of denying outpatient care to inmates to reduce costs.  (*See* Compl.)  However, because Robinson has not plausibly alleged an underlying claim that his constitutional rights were violated, his derivative claim against Wellpath cannot proceed at this time.  *See, e.g., Mulholland v. Gov't Cnty. of Berks, Pa*., 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.")  This claim will be dismissed without prejudice.

Robinson also asserts official capacity claims against Wellpath and its employees, Letizio, Huner, and Bora.  (*See* Compl.)  To the extent that Robinson asserts claims against the Defendants in their "official capacities," the claims are not cognizable because Wellpath is a private entity.  *See Kreis v. Northampton Cnty. Prison*, No. 21-2360, 2022 WL 4236692, at *8 (E.D. Pa. Sept. 14, 2022) (stating that official capacity claims are "inapplicable to suits against private parties where the entity is also susceptible to suit") citing *Owens v. Connections Cmty. Support Programs, Inc.,* 840 F.Supp.2d 791, 796 (D. Del. 2012) ("Generally, a suit against a [ ] public officer in his or her official capacity is used to compel that officer to take some official

14

action [and that] concept . . . is inapplicable to suits against private parties where the entity is also susceptible to suit."). Even if official capacity suits against individuals who work for private companies were cognizable, the suit would, in effect, be one against the company for whom that individual works. *See Graham,* 473 U.S. at 105. Thus, because Robinson has included Wellpath as a Defendant, his official capacity claims against Letizio, Huner, and Bora are duplicative and will be dismissed with prejudice.

> **D.     State Law Claims**

Because the Court has dismissed his federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over Robinson's state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). The state citizenship of an LLC like Wellpath is

determined by the citizenship of its members. *Zambelli Fireworks Mfg. Co.*, 592 F.3d at 420. It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Robinson alleges that at all relevant times, he has been an inmate at SCI-Graterford and SCI-Phoenix. (Compl. at 4.) Robinson does not allege where he was domiciled before he was imprisoned. He does not allege the citizenship of the individual Defendants and provides only the address of SCI Phoenix as their place of employment. (*Id*. at 2.) For Wellpath, he provides the address of a regional office in Lemoyne, Pennsylvania, but no citizenship information, as required. (*Id*. at 2, 4.); *see Hertz*, 559 U.S. at 80-81. Because Robinson has not demonstrated that complete diversity between the parties exists, the Court cannot exercise jurisdiction over his state law claims and they will be dismissed. Robinson will be granted leave to amend his Complaint to clarify this issue.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Robinson leave to proceed *in forma pauperis*. The following claims will be dismissed with prejudice: Rubinson's official capacity claims against the individual Defendants, his claims based on the Defendants' refusal to replace his back brace, and his claims based on denials of MRIs on his back in 2019 and early 2023. The remainder of Robinson's constitutional claims will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Robinson's state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. Robinson will be granted

16

leave to file an amended complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

S/ WENDY BEETLESTONE

WENDY BEETLESTONE, C. J.